# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00182-CR

**Jose Gudiel-Brenes aka Christian Palacios, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-07-300971, HONORABLE BOB PERKINS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found appellant Jose Gudiel-Brenes guilty of capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2009). The State did not seek the death penalty, and the trial court assessed punishment at life imprisonment. *See id*. § 12.31(a). In a single issue, appellant contends that the trial court reversibly erred by overruling his motion for new trial without conducting an evidentiary hearing. We overrule this contention and affirm the conviction.

Eighteen-year-old Gamaliel Jimenez-Bohorquez was fatally shot during a robbery on the night of April 21, 2007. Gamaliel's father, Guillermo Jimenez-Hernandez, testified that he and his son were walking home just after 10:00 p.m. when they were accosted by two men. One of the men pointed a black pistol at Guillermo's head and demanded money. Guillermo gave the man $105. The man then pointed the pistol at Gamaliel and demanded money. Gamaliel dropped

$1000 on the ground. The man then shot Gamaliel and, after gathering up the money, the two assailants ran from the scene.

Guillermo first told the police that the two robbers were black, but he changed his statement and said that the man with the pistol was black and the second man was Hispanic. He said that he noticed a white car near the scene of the robbery, but he did not see if the robbers got into it as they fled.

Niesha Mackey spoke to the police at the scene of the shooting and testified at appellant's trial. Mackey said that she noticed a group of Hispanic men "fighting and kicking." She testified that the men "scattered" when she approached them in her car, and she called 911. Mackey said that she noticed a burgundy or maroon car at the scene, but she did not see any of the men get into it. She also testified that as she was calling the police, a white truck or SUV drove past her at a high rate of speed.

Juan Manuel Irias contacted the police a few days after the murder. He initially claimed to have been a witness, but he later admitted participating in the crime. Testifying under a grant of immunity, Irias said that he, appellant, and a woman were driving around in appellant's red Dodge looking for someone to rob when they spotted the Jimenezes. According to Irias, appellant armed himself with a pistol that he took from under the car seat. Irias testified that it was appellant who brandished the pistol and demanded money, and it was appellant who fired the fatal shot.

A .38 caliber bullet was recovered from Gamaliel's body. Although the murder weapon was never recovered, there was evidence that appellant owned an unusual .38 caliber

2

revolver at the time of the murder. Appellant's former employer, Oady Lee Spencer, testified that appellant had often shown him a black .38 revolver with a pin through the barrel to prevent it from being fired. Spencer said that the last time he saw this pistol was around April 15, 2007. At that time, the pin had been removed, leaving holes in the barrel. When Spencer remarked that it would be dangerous to fire the weapon, appellant told him that the pistol "would work." Appellant's former roommate, Rolando Orellana-Gaytan, testified that on April 22, 2007, appellant told him that he had committed a murder with two other people. Orellana also testified that he had seen appellant's black .38 revolver and was with appellant when he sold the revolver to Pedro Carballo. Carballo testified that he purchased a black .38 revolver from appellant. He said that he did not notice the two holes in the barrel until he fired the pistol a few days later and "lead came out and it fell on my arm and it scared me." Carballo said that he left the pistol under a trailer, but the pistol was not there when he took police officers to the location.

A police crime scene specialist testified that Gamaliel's shirt had a large bullet hole and a smaller hole that might have been caused by a bullet fragment. A police firearms examiner testified that .38 caliber bullets found in appellant's residence were consistent with the bullet recovered from Gamaliel's body. This witness also testified that the bullet recovered from the body had defects that were consistent with it being fired from a pistol with holes in the barrel of the sort described by the other witnesses.

Appellant's trial counsel vigorously cross-examined the State's witnesses to highlight the inconsistencies in their testimony. Counsel also stressed the State's reliance on Irias's self-serving testimony. The defense rested without calling any witnesses.

3

Sentence was imposed in open court on March 12, 2009. Trial counsel filed a notice of appeal on March 20.[1] On April 16, appellant's pro se "affidavit of fact/inmate's declaration and motion for new trial" was filed by the district clerk. In this document, which was supported by a declaration under penalty of perjury dated April 6, 2009, appellant alleged that his trial counsel provided ineffective assistance because "he failed to conduct an adequate investigation of the facts and potential witnesses in the case, specifically, defendant requested [counsel] to contact and subpoena several witnesses who could have testified on his behalf during the guilt-innocence and punishment phases of trial." As it appears in the clerk's record, the face of the motion bears an undated written notation signed by the trial court: "This is a nullity. This is filed too late. Deadline was 4/13."[2] The court took no other action on the motion. Appellant contends that the motion for new trial was timely and that an evidentiary hearing on the motion was required.

Appellant bases his contention that the motion was timely on the assumption that the trial court's written notation was made before the motion was filed by the district clerk. Based on this assumption, appellant argues that "it is reasonable to believe" that the court acted no later than April 15, that the clerk received the motion no later than April 14, and that appellant deposited the motion in the mail no later than April 13. This would make the motion timely under the mailbox rule. *See* Tex. R. App. P. 9.2(b).

---

[1] Trial counsel moved to withdraw on May 5. The order was granted the day it was filed, and appellate counsel was appointed on May 6.

[2] The deadline for filing the motion for new trial was Monday, April 13, 2009. *See* Tex. R. App. P. 4.1(a), 21.4(a).

4

Alternatively, appellant urges that we should be guided by the opinion in *Warner v. Glass*, 135 S.W.3d 681 (Tex. 2004). In that case, the supreme court held that a pro se inmate's civil petition that is placed in a properly addressed and stamped envelope or wrapper is deemed filed at the moment prison authorities receive the document for mailing. *Id*. at 682; *see* Tex. R. Civ. P. 5. In *Warner*, the date of the postmark was not reflected in the record, but the inmate's petition was received and filed by the clerk six days after the deadline. 135 S.W.3d at 683. The supreme court reversed the judgment dismissing the petition as untimely and remanded the cause to the trial court for a finding as to the date the petition was placed in the prison mail system. *Id*. at 686.

The State replies that the trial court obviously acted on appellant's pro se motion for new trial after it was filed by the clerk on April 16, noting that the court circled the date of the clerk's file mark. Using appellant's own calculations, the State argues that appellant could have deposited the motion in the mail as late as April 14. More substantially, the State argues that the only pertinent fact established by the record is the date the motion was filed by the clerk and that it is pure speculation for appellant to assert that he complied with the mailbox rule. The State further argues that, unlike the inmate in *Warner*, appellant has never alleged that he timely deposited his motion for new trial in the prison mail system. *See id*. at 683.

We need not decide whether appellant's pro se motion for new trial was timely (or abate the appeal for a finding on this issue) because, even if the motion was timely, the trial court did not abuse its discretion by failing to conduct a hearing. First, appellant was represented by counsel when the motion was filed, and a trial court may disregard any pro se motion presented by a defendant who is represented by counsel. *Robinson v. State*, 240 S.W.3d 99, 922-23 (Tex. Crim.

5

App. 2007). Second, the bare assertions in appellant's motion were not sufficient to entitle him to a hearing. A trial court must conduct a hearing on a motion for new trial if the motion and accompanying affidavits raise matters not determinable from the record that would entitle the defendant to relief. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). Although the pleadings need not establish a prima facie case for a new trial, they must show that reasonable grounds exist for holding that relief could be granted. *Wallace*, 106 S.W.3d at 108; *Reyes*, 849 S.W.2d at 816. To obtain a hearing on a motion for new trial alleging ineffective counsel, the defendant must allege facts from which the trial court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of the trial would have been different. *Smith v. State*, 286 S.W.3d 333, 340-41 (Tex. Crim. App. 2009). In his pro se motion, appellant asserted that his trial counsel did not adequately investigate the case, but he did not allege what further investigation counsel should have conducted. Appellant asserted that counsel failed to subpoena witnesses, but he did not name the witnesses or explain how their testimony would have benefitted his defense. Similar allegations have been held insufficient to require a hearing on a motion for new trial. *See King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000). For both of these reasons, we hold that the trial court did not abuse its discretion by failing to conduct a hearing on appellant's pro se motion for new trial.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   March 26, 2010

Do Not Publish